**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

NOVO NORDISK A/S AND NOVO
NORDISK INC.,

                Plaintiffs,

        v.

LIQUIVITA, LLC AND LQV
LAUDERDALE BEACH, LLC

                Defendants.

Case No. _____

**COMPLAINT**

Plaintiffs Novo Nordisk A/S ("NNAS") and Novo Nordisk Inc. ("NNI") (collectively, "Plaintiffs" or "Novo Nordisk"), by and through their attorneys, Covington & Burling LLP, file their complaint against Liquivita, LLC and LQV LAUDERDALE BEACH, LLC ("Defendants") for trademark infringement and false advertising, and seek injunctive and other relief. Plaintiffs allege as follows, on actual knowledge with respect to themselves and their own acts, and on information and belief as to all other matters.

**<u>INTRODUCTION</u>**

1.      Novo Nordisk is a healthcare company with a 100-year history of innovation in developing medicines to treat serious chronic diseases like diabetes and obesity.

2.      The development of semaglutide is an example of Novo Nordisk's commitment to innovation for people living with chronic diseases. Semaglutide is the foundational molecule that serves as the primary ingredient for Novo Nordisk's three prescription-only medicines approved by the Food and Drug Administration ("FDA"): Ozempic® (semaglutide) injection and Rybelsus® (semaglutide) tablets for adults with type 2 diabetes and Wegovy® (semaglutide) injection for chronic weight management.

3.     Novo Nordisk is the only company in the United States with FDA-approved medicines containing semaglutide.  Novo Nordisk is also the only company authorized to identify its medicines containing semaglutide using the trademarks Ozempic®, Wegovy®, and Rybelsus®.  The FDA has not approved any generic versions of these medicines. To the contrary, the FDA has sent warning letters to companies that claimed that their unapproved drug products have the "same active ingredient as Ozempic, Rybelsus, and Wegovy," noting that Ozempic and Wegovy are currently the only "two injectable semaglutide products FDA-approved for the U.S. market."[1]

4.     This is an action brought pursuant to the Lanham Act, 15 U.S.C. §§ 1051 et seq., related state laws, and the common law arising out of Defendants' infringement of Plaintiffs' rights in their Ozempic® and Wegovy® marks and Defendants' false advertising.

5.     Defendants use Novo Nordisk's Ozempic® and Wegovy® marks to market and sell to patients compounded drug products that purport to contain semaglutide. Despite such compounded drug products having not been evaluated by the FDA for their safety, effectiveness, or quality, Defendants falsely and misleadingly represent to patients that their products are the same as, or equivalent to, Novo Nordisk's FDA-approved medicines.

6.     Defendants' conduct is likely to confuse and deceive patients into mistakenly believing that they are purchasing authentic Novo Nordisk medicines or medicines that have been evaluated by the FDA, studied in clinical trials, and deemed safe and effective.

**THE PARTIES**

7.     Plaintiff NNAS is a corporation organized and existing under the laws of the Kingdom of Denmark and has its principal place of business in Bagsværd, Denmark.

---

[1] FDA – Warning Letter to Ozempen.com, MARCS-CMS 684435 — JUNE 24, 2024, https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/ozempencom-684435-06242024#:~:text=WARNING%20LETTER&text=As%20discussed%20below%2C%20FDA%20has,new%20drugs%20and%20misbranded%20drugs.

8. Plaintiff NNI is a corporation organized and existing under the laws of Delaware and has its principal place of business in Plainsboro, New Jersey.

9. NNI markets, promotes, offers, and/or sells Novo Nordisk's Ozempic® and Wegovy® medicines throughout the United States, including in this District. NNAS has granted to NNI exclusive rights to distribute with the right to market, advertise, promote, offer for sale and sell Ozempic® and Wegovy® medicines in the United States.

10. Defendants Liquivita, LLC and LQV Lauderdale Beach, LLC are Florida limited liability companies with registered business addresses at 5153 NW 42nd Terrace, Coconut Creek, Florida 33073 and 3708 North Ocean Boulevard, Fort Lauderdale, Florida 33308, respectively, in this judicial district. Defendants sell and promote compounded drug products that purport to contain semaglutide that have not been approved by the FDA ("Unapproved Compounded Drugs"). Defendants sell and promote Unapproved Compounded Drugs masquerading as Ozempic® and Wegovy® and use the Ozempic® and Wegovy® marks in their false advertising and promotion of Unapproved Compounded Drugs that are neither Ozempic® nor Wegovy®.

## JURISDICTION AND VENUE

11. The Court has subject matter jurisdiction over the Lanham Act causes of action pleaded herein pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a). The Court has supplemental jurisdiction over the state and common law causes of action pleaded herein pursuant to 28 U.S.C. § 1338(b).

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants operate in this District, manufacture and/or sell their compounded drug products that purport to contain semaglutide in this District, and otherwise conducts business in this District. Defendants are subject to personal jurisdiction in this District.

## NOVO NORDISK'S FDA-APPROVED SEMAGLUTIDE MEDICINES AND OZEMPIC® AND WEGOVY® TRADEMARKS

13.     Plaintiffs use the trademarks "Ozempic" and "Wegovy" to identify and promote the FDA-approved Ozempic® and Wegovy® medicines. The Ozempic® and Wegovy® medicines are sold and marketed in the United States by NNAS's indirect, wholly-owned subsidiary, NNI.

14.     The Ozempic® medicine is an injectable medication indicated for adults with type 2 diabetes to improve blood sugar (glucose), along with diet and exercise. Ozempic® also lowers the risk of major cardiovascular events such as stroke, heart attack, or death in adults with type 2 diabetes and known heart disease.

15.     The Wegovy® medicine is an injectable medication indicated to reduce excess body weight and maintain weight reduction long-term in adults and children aged $\geq 12$ years with obesity and some adults that are overweight with weight-related medical problems, along with a reduced calorie diet and increased physical activity. Wegovy® is also indicated, with a reduced calorie diet and increased physical activity, to reduce the risk of major adverse cardiovascular events such as cardiovascular death, heart attack, or stroke in adults with known heart disease and with either obesity or overweight.

16.     The Ozempic® and Wegovy® medicines have been extensively studied in clinical trials and are FDA-approved.

17.     Each of the Ozempic® and Wegovy® medicines has a unique safety and efficacy profile which is detailed in its respective product label.

18.     The Ozempic® and Wegovy® medicines are prescription-only medicines that should only be prescribed in direct consultation with, and under the supervision of, a licensed healthcare professional.

19.     Novo Nordisk first adopted and used the Ozempic® mark at least as early as 2017, and has used it continuously since that time.

20.     The Ozempic® trademark is inherently distinctive.

21.     Novo Nordisk has promoted, advertised, and marketed its prescription-only medicine using the Ozempic® mark in many different channels, directed to physicians, other health care professionals, and patients, including on the websites ozempic.com and novonordisk-us.com. As a result of its use of the Ozempic® mark, NNAS owns valuable common law rights in and to the Ozempic® mark.

22.     Plaintiff NNAS is the owner of U.S. trademark registration number 4,774,881, issued on July 21, 2015, for the mark Ozempic® for pharmaceutical preparations, in International Class 5. A true and correct copy of Plaintiff NNAS's registration for the Ozempic® mark is attached hereto as **Exhibit A**.

23.     Novo Nordisk first adopted and used the Wegovy® mark at least as early as 2021, and has used it continuously since that time.

24.     The Wegovy® trademark is inherently distinctive.

25.     Novo Nordisk has promoted, advertised, and marketed its prescription-only medicine using the Wegovy® mark in many different channels, directed to physicians, other health care professionals, and patients, including on the websites wegovy.com and novonordisk-us.com. As a result of its use of the Wegovy® mark, NNAS owns valuable common law rights in and to the Wegovy® mark.

26.     Plaintiff NNAS is the owner of (a) U.S. trademark registration number 6,585,492, issued on December 14, 2021, for the mark Wegovy® for pharmaceutical preparations, in International Class 5; and (b) U.S. trademark registration number 6,763,029, issued on June 21, 2022, for the mark Wegovy® in a stylized form for pharmaceutical preparations, in International Class 5. True and correct copies of Plaintiff's registrations numbers 6,585,492 and 6,763,029 for the Wegovy® mark are attached hereto as **Exhibit B** and **Exhibit C**, respectively.

27.     As a result of Novo Nordisk's long use, promotion, and advertising of the Ozempic®
and Wegovy® trademarks and medicines, the Ozempic® and Wegovy® marks are exclusively
associated with Plaintiffs, serve to identify genuine Novo Nordisk medicines, and are valuable assets
of Novo Nordisk.

28.     As a result of Novo Nordisk's long use, promotion, and advertising of the Ozempic®
and Wegovy® trademarks and medicines, the Ozempic® and Wegovy® trademarks are well-known,
strong, and famous marks, and became such prior to any of the acts of Defendants complained of
herein.

**DEFENDANTS' SALE OF UNAPPROVED COMPOUNDED DRUGS**

29.     Novo Nordisk has not authorized Defendants to use its marks, has not provided
Defendants with Novo Nordisk's FDA-approved semaglutide medicines, and does not sell the bulk
semaglutide in Novo Nordisk's FDA-approved semaglutide medicines to any compounding
pharmacies from which they may be sourcing its Unapproved Compounded Drugs.

30.     Defendants market and sell to patients Unapproved Compounded Drugs that purport
to contain semaglutide and that are not approved by the FDA.

31.     On information and belief, the Unapproved Compounded Drugs sold by Defendants
are made by compounding pharmacies, which deliver them either directly to patients or to Defendants
for administration or dispensing to patients.

32.     The FDA defines compounding as a "practice in which a licensed pharmacist, a
licensed physician, or, in the case of an outsourcing facility, a person under the supervision of a
licensed pharmacist, combines, mixes, or alters ingredients of a drug to create a medication tailored to
the needs of an individual patient."[2]

---

[2] Human Drug Compounding, https://www.fda.gov/drugs/guidance-compliance-regulatory-information/human-drug-compounding.

33.     According to the FDA, "[c]ompounded drugs are not FDA-approved. This means that FDA does not review these drugs to evaluate their safety, effectiveness, or quality before they reach patients."[3]

34.     The FDA has further stated that compounded drugs "do not have the same safety, quality, and effectiveness assurances as approved drugs. Unnecessary use of compounded drugs unnecessarily exposes patients to potentially serious health risks."[4]   As the FDA has explained, "[c]ompounded drugs pose a higher risk to patients than FDA-approved drugs because compounded drugs do not undergo FDA premarket review for safety, quality or effectiveness.  Compounded drugs should only be used for patients whose medical needs cannot be met by an available FDA-approved drug.[5]

35.     Based on data as of June 30, 2024, the FDA's Adverse Event Reporting System (FAERS) database includes 542 cases of adverse events associated with compounded "semaglutide."[6]   Of those cases, 388 were classified as "serious" adverse events, 124 reported hospitalization, and ten involved deaths.  This is more than twice the number of adverse events for all compounded drugs in 2022.  The FDA has received reports of adverse events, some requiring hospitalization, related to overdoses from dosing errors associated with compounded "semaglutide" products.[7]   In several instances, patients mistakenly administered five to 20 times more than the intended dose of compounded "semaglutide."  The FDA believes the containers and packaging used

---

[3] Compounding Laws and Policies, https://www.fda.gov/drugs/human-drug-compounding/compounding-laws-and-policies.
[4] Compounding and the FDA: Questions and Answers, https://www.fda.gov/drugs/human-drug-compounding/compounding-and-fda-questions-and-answers.
[5] FDA Alerts Health Care Providers, Compounders and Patients of Dosing Errors Associated with Compounded Injectable Semaglutide Products, https://www.fda.gov/drugs/human-drug-compounding/fda-alerts-health-care-providers-compounders-and-patients-dosing-errors-associated-compounded?utm_medium=email&utm_source=govdelivery.
[6] FDA Adverse Event Reporting System (FAERS) Public Dashboard, https://www.fda.gov/drugs/questions-and-answers-fdas-adverse-event-reporting-system-faers/fda-adverse-event-reporting-system-faers-public-dashboard (last visited July 31, 2024).
[7] FDA Alerts Health Care Providers, Compounders and Patients of Dosing Errors Associated with Compounded Injectable Semaglutide Products, https://www.fda.gov/drugs/human-drug-compounding/fda-alerts-health-care-providers-compounders-and-patients-dosing-errors-associated-compounded.

by compounders, including multidose vials and prefilled syringes, the varying product concentrations, and the instructions accompanying the compounded drug contribute to the potential medical errors.  A previous publication from the Journal of the American Pharmacists Association also highlighted administration errors where patients accidentally self-administered doses of compounded "semaglutide" up to 10 times greater than the intended amount.[8]

36.     FDA has issued guidance on "Medications Containing Semaglutide Marketed for Type 2 Diabetes or Weight Loss," which provides that: (1) "compounded drugs are not FDA-approved or evaluated for safety and effectiveness"; and (2) "FDA has received adverse event reports after patients used compounded semaglutide. Patients should not use a compounded drug if an approved drug is available to treat a patient. Patients and health care professionals should understand that the agency does not review compounded versions of these drugs for safety, effectiveness, or quality."[9]

### DEFENDANTS' TRADEMARK INFRINGEMENT AND FALSE ADVERTISING IN CONNECTION WITH THEIR SALE OF UNAPPROVED COMPOUNDED DRUGS

37.     Despite the foregoing, and well after NNAS's first use and registration of its Ozempic® and Wegovy® marks, Defendants have used Novo Nordisk's Ozempic® and Wegovy® trademarks to market and sell Unapproved Compounded Drugs purporting to contain "semaglutide" that are neither Ozempic® nor Wegovy®, and have made false and misleading representations to patients regarding the nature of their Unapproved Compounded Drugs.

38.     Defendants have, for example, used Novo Nordisk's Ozempic® and Wegovy® trademarks to identify and market their Unapproved Compounded Drugs.

---

[8] Joseph E. Lambson et al, *Administration Errors of Compounded Semaglutide Reported to a Poison Control Center— Case Series*, 63 J. Am. Pharmacists Assc'n 5 (2023), available at https://www.japha.org/article/S1544-3191(23)00231-5/abstract.
[9] Medications Containing Semaglutide Marketed for Type 2 Diabetes or Weight Loss, https://www.fda.gov/drugs/postmarket-drug-safety-information-patients-and-providers/medications-containing-semaglutide-marketed-type-2-diabetes-or-weight-loss.

39.     Defendants falsely advertise their Unapproved Compounded Drugs by making statements that describe Ozempic® and Wegovy® but that are false or misleading when in reference to Defendants' Unapproved Compounded Drugs.

40.     Defendants have claimed or implied that their Unapproved Compounded Drugs have been approved by the FDA or have been reviewed by the FDA for safety, effectiveness, and quality.

41.     Defendants have claimed or implied that their Unapproved Compounded Drugs contain the same semaglutide that the FDA evaluated in the context of reviewing and approving Novo Nordisk's new drug applications for Ozempic® and Wegovy®.

42.     Defendants have claimed or implied that their Unapproved Compounded Drugs are compounded or generic versions of Wegovy® and Ozempic®.

43.     On information and belief, Defendants have engaged in these unlawful practices to attract customers and generate revenues and profits, including by passing off their Unapproved Compounded Drugs purporting to contain "semaglutide" as Ozempic® and Wegovy® or authorized variations of those medicines.

44.     Defendants' prominent and misleading use of the Ozempic® and Wegovy® marks is likely to cause patients to believe falsely that they are actually purchasing genuine Ozempic® and Wegovy® medicines; that Defendants are a source for Novo Nordisk's FDA-approved semaglutide medicines; or that Defendants' services are provided, licensed, sponsored, authorized, or approved by Novo Nordisk.

45.     Defendants' use of the Ozempic® and Wegovy® marks is without the permission, consent or authorization of Novo Nordisk. Defendants have no right to use, and Defendants know that they have no right to use, the Ozempic® and Wegovy® marks in connection with Defendants' Unapproved Compounded Drugs or otherwise.

46.     Novo Nordisk has no control over the nature, quality, or efficacy of the products sold by Defendants, including the Unapproved Compounded Drugs.

47.     Defendants' unlawful conduct is reflected in the paragraphs that follow, as well as **Exhibit D** hereto.

48.     Defendants falsely claim on their website that their Unapproved Compounded Drugs have been approved by the FDA.

## What is the FDA-approved semaglutide treatment?

Semaglutide is a drug that is injected under the skin in order to help regulate the hormones in the body that regulate appetite and food intake. The treatment was originally developed to help individuals with Type 2 diabetes but has recently been approved by the FDA to help with weight management for those with existing conditions related to their weight.

Semaglutide works by mimicking the specific hormone glucagon-like peptide-1 to limit appetite. The treatment is increased over a period of weeks in order to get the best results and minimize negative reactions.

## What are the benefits of semaglutide injections?

The approval of semaglutide is great news for those who have been struggling with weight loss. For one, injections are only given once a week, which makes this treatment far more tolerable and attainable than treatments of the past.

Moreover, the treatment has been shown to be effective in clinical trials. What's most exciting about the treatment, is that it can help patients pass the 10 percent weight loss threshold that is needed to counteract the health risks that are posed by obesity. This has been a huge barrier for prior medications which could help individuals lose weight — but not the amount of weight needed to see heath benefits. This is the first medication of its kind that is consistently showing results where it matters most.

## How can I move forward with the treatment in my weight loss program?

If you are ready to move forward with a weight management program that works for you, it may be time to set up a consultation at any of our Liquivida locations. Our wellness experts can help you determine what treatment will best suit your needs and how to get started. This includes semaglutide injections!

# Which Weight Loss Program is Right For You?

Burn fat in difficult areas to sculpt your physique as you want. Our lipotropic injections are a quick and simple solution to reduce fat in places where exercise is sometimes inadequate.

Semaglutide injections are a powerful weight reduction treatment authorized by the FDA. Liquivida's two-week weight loss program incorporates this incredible drug and the results are outstanding! Semglutide will effectively assist you in reducing your calorie intake by decreasing your hunger, slowing down the stomach's digestion of food, and reducing your body fat percentage over time with benefits that last!

At Liquivida®, we are with you every step of the way to ensure you're losing weight properly, effectively and healthily. If recommended per your consultation, combining Semaglutide injections with Lipotropic B12 shots for additional fat burn may be an optimal solution to burn fat, shape the body & lower your metabolism for long-term results & maintenance.

49.     Such claims are false and misleading. First, the FDA only approves complete medications, not molecules like semaglutide. Second, the FDA has not evaluated, let alone approved, Defendants' Unapproved Compounded Drugs.

50.     Defendants' website also false and misleadingly refers to "semaglutide" interchangeably with the Ozempic® and Wegovy® medicines and displays images of authentic Wegovy® packaging.

11



The battle against heart disease, one of the leading causes of death globally, has taken a significant stride forward with the recent approval of Wegovy by the Food and Drug Administration (FDA). The medication in Wegovy, semaglutide, has long been recognized for its efficacy in managing chronic conditions such as diabetes and weight loss. However, this new designation as a heart disease prevention drug marks a groundbreaking development in the realm of preventive medicine and opens up new avenues for combating cardiovascular risks, particularly in overweight and obese patients.

## Understanding Semaglutide

Semaglutide, marketed under names like Ozempic and Wegovy, is a glucagon-like peptide-1 (GLP-1) receptor agonist that has been primarily used to manage type 2 diabetes. However, its potential for weight loss became evident through various studies. Semaglutide works by mimicking the GLP-1 hormone, which regulates appetite and food intake. By enhancing the feeling of fullness and reducing hunger, it helps individuals consume fewer calories.

51.     Defendants falsely represent that the terms "Ozempic" and "Wegovy" are mere marketing names for semaglutide and suggest that their Unapproved Compounded Drugs are the same as, or generic equivalents of, the Ozempic® and Wegovy® medicines.

52.     To the contrary, Novo Nordisk is not directly or indirectly supplying semaglutide to Defendants or any compounding pharmacies from which they may be sourcing their Unapproved Compounded Drugs.

53.     Further, a generic drug is one that the FDA has found to meet the "same high standards of quality and manufacturing as the brand-name product."[10]  No generic form of Plaintiffs' FDA-approved Ozempic® and Wegovy® medicines currently exists. The FDA has not reviewed the "semaglutide" allegedly in Defendants' Unapproved Compounded Drugs for safety, effectiveness, or quality. Defendants have no basis to claim that this semaglutide is approved by the FDA or equivalent to the semaglutide in Novo Nordisk's FDA-approved medicines.

54.     Defendants further mislead patients, on their website and in advertising, by making false and misleading claims about the effectiveness of their Unapproved Compounded Drugs. Defendants claim that their Unapproved Compounded Drugs are "clinically proven" and "can lead to significant weight loss, with some studies reporting an average loss of 15% of body weight".

## Benefits of Semaglutide:

**Proven Efficacy:** Clinical trials have shown that Semaglutide can lead to significant weight loss, with some studies reporting an average loss of 15% of body weight.

**Appetite Control:** The medication effectively reduces appetite, making it easier for individuals to adhere to a calorie-restricted diet.

**Improved Metabolic Health:** Semaglutide not only aids in weight loss but also improves blood sugar control, reducing the risk of diabetes-related complications.

---

[10] U.S. Food & Drug Administration – Generic Drugs: Questions & Answers (March 16, 2021) https://www.fda.gov/drugs/frequently-asked-questions-popular-topics/generic-drugs-questions-answers#:~:text=A%20generic%20drug%20is%20a,performance%20characteristics%2C%20and%20intended%20use.



**SEMAGLUTIDE**

Affordable and effective.



*Say goodbye to stubborn weight with Semaglutide!*

This powerful medication has been clinically proven to aid in significant weight loss. Whether you're looking to lose a few pounds or make a significant change, Semaglutide can help you reach your goals. With regular use, you'll see results in as little as 12 weeks. Don't let your weight hold you back any longer, ask about Semaglutide today!



Semaglutide is an effective weight loss solution that has been clinically proven to help individuals shed stubborn pounds. This medication works by mimicking the effects of GLP-1, a hormone that regulates appetite and metabolism. Regular use of semaglutide can help suppress cravings and improve satiety, making it easier to maintain a healthy diet and exercise routine. Furthermore, semaglutide has been shown to improve blood sugar and blood pressure levels, making it a great option for those with obesity-related health concerns. With regular use, you can start seeing weight loss results within just 12 weeks. Read more

55.     Novo Nordisk's FDA-approved medicines are the only drugs containing semaglutide to have been publicly studied for weight loss in clinical trials. On information and belief, no such data exist for Defendants' Unapproved Compounded Drugs.

56.     Defendants' advertising and promotional materials are false and misleading, suggesting an association with Plaintiffs' FDA-approved Ozempic® and Wegovy® medicines when no such association exists.

57.     There is no need for Defendants to use the Ozempic® and Wegovy® trademarks to advertise or promote their Unapproved Compounded Drugs purporting to contain "semaglutide," other than to trade on the reputation of Plaintiffs, create confusion in the marketplace, mislead the public regarding the origin, identity, or source of Defendants' Unapproved Compounded Drugs, or erroneously indicate that their Unapproved Compounded Drugs have been determined by the FDA to be safe or effective.

58.     Defendants' unauthorized use of the Ozempic® and Wegovy® trademarks has likely caused and is likely to continue to cause confusion, mistake, and deception, and infringes Plaintiffs' established exclusive rights in those trademarks.

59.     Defendants' false and misleading marketing is also likely to expose patients to unnecessary risks. Patients who mistakenly believe Defendants to be offering Novo Nordisk's FDA-approved medicines, or equivalent thereto, are unlikely to understand the unique risks associated with, or the lack of clinical trials or testing establishing the safety and effectiveness of, Defendants' Unapproved Compounded Drugs.[11]

---

[11] *See, e.g.*, Dozens Say They Lost Eyesight After Routine Surgery Using Compounded Pharmacy Drugs, WFAA, https://www.wfaa.com/article/news/do-not-publish-yet/287-5f002ed3-e110-4063-9959-a2e5f54b5097 (reporting mistaken belief of patient taking a compounded drug that "every pill you take, every shot you take is tested.").

60.     On information and belief, unless enjoined by this Court, Defendants will continue to use the Ozempic® and Wegovy® marks and/or otherwise falsely advertise their products as associated with or being Ozempic® and Wegovy®, all in violation of Plaintiffs' rights.

61.     On information and belief, unless enjoined by this Court, Defendants' unauthorized use of the Ozempic® and Wegovy® trademarks will continue to cause confusion, mistake, and deception, and infringe Plaintiffs' established exclusive rights in those trademarks.

## FIRST CAUSE OF ACTION

### Trademark Infringement in Violation of 15 U.S.C. § 1114(1)

62.     Plaintiff NNAS realleges and incorporates by reference each of the allegations in paragraphs 1–61 of this Complaint as though fully set forth here.

63.     Plaintiff NNAS's Ozempic® and Wegovy® marks are inherently distinctive, strong, valid, and protectable trademarks owned by Plaintiff NNAS.

64.     Plaintiff NNAS's right to use its Ozempic® registration constitutes *prima facie* evidence of the validity of the mark, of Plaintiff NNAS's registration and ownership of the mark, and of Plaintiff NNAS's exclusive right to use the mark in commerce on or in connection with the goods identified in the registration.

65.     Plaintiff NNAS's trademark registrations for its Wegovy® marks constitute *prima facie* evidence of the validity of the marks, of Plaintiff NNAS's registration and ownership of the marks, and of Plaintiff NNAS's exclusive right to use the mark in commerce on or in connection with the goods identified in the registrations.

66.     By virtue of its prior use and registration, Plaintiff NNAS has priority over Defendants with respect to the use of the Ozempic® and Wegovy® marks for pharmaceutical preparations sold in the United States.

67.     Defendants use the Ozempic® and Wegovy® marks extensively and without proper justification in connection with the sale, advertising, and promotion of Unapproved Compounded Drugs purporting to contain semaglutide.

68.     Defendants' use in commerce of the Ozempic® and Wegovy® marks is likely to cause confusion, to cause mistake, or to deceive with respect to Plaintiff NNAS's identical marks.

69.     The above-described acts of Defendants constitute infringement of registered trademarks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), entitling Plaintiff NNAS to relief.

70.     Defendants have unfairly profited from their trademark infringement.

71.     By reason of Defendants' acts of trademark infringement, Plaintiff NNAS has suffered damage to the goodwill associated with its marks.

72.     Defendants' acts of trademark infringement have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiff NNAS, its federally registered trademarks and the valuable goodwill associated with those trademarks.

73.     Defendants' acts of trademark infringement have irreparably harmed, and if not enjoined, will continue to irreparably harm the interests of the public in being free from confusion, mistake, and deception.

74.     By reason of Defendants' acts, Plaintiff NNAS's remedies at law are not adequate to compensate for the injuries inflicted by Defendants. Accordingly, Plaintiff NNAS is entitled to entry of preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

75.     By reason of Defendants' willful acts of trademark infringement, the Court should award disgorgement of Defendants' profits (enhanced at the Court's discretion), treble damages, and costs under 15 U.S.C. § 1117 to NNAS.

76.     This is an exceptional case, making Plaintiff NNAS eligible for an award of attorneys'

fees under 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION

**False and Misleading Advertising and Promotion
in Violation of 15 U.S.C. § 1125(a)(1)(B)**

77.     Plaintiffs reallege and incorporate by reference each of the allegations in paragraphs

1–61 of this Complaint as though fully set forth here.

78.     Defendants' practices, as described in this Complaint, constitute unfair competition

and false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C.

§ 1125(a)(1)(B).

79.     Defendants have violated the Lanham Act by using false or misleading descriptions

of fact and false or misleading representations of fact in their commercial advertising or promotion

that misrepresent the nature, characteristics, and/or qualities of Defendants' business practices and

products, as set forth above.

80.     Defendants have also engaged in other false or misleading advertising and promotion

intended to assure patients that Defendants' practices are lawful. On information and belief,

Defendants provide patients who purchase Defendants' Unapproved Compounded Drugs (or whom

Defendants are trying to persuade to purchase its drugs) information that makes several false or

misleading statements, including those described herein and in the exhibits hereto.

81.     The above-described acts of Defendants, if not enjoined by this Court, are likely to

deceive members of the general public.

82.     The above-described acts of Defendants have irreparably harmed and, if not enjoined,

will continue to irreparably harm Plaintiffs.

83.     The above-described acts of Defendants have irreparably harmed and, if not enjoined, will continue to irreparably harm the interest of the public in being free from confusion, mistake, and deception.

84.     By reason of Defendants' acts as alleged above, Plaintiffs have suffered and will continue to suffer injuries, including injury to Plaintiffs' business reputation. However, Plaintiffs' remedies at law are not adequate to compensate for all the injuries inflicted by Defendants. Accordingly, Plaintiffs are entitled to entry of preliminary and permanent injunctive relief requiring Defendants to cease their false and misleading advertising and promotion and unfair competitive practices.

85.     Because the above-described acts of Defendants are willful, the Court should award disgorgement of Defendants' profits (enhanced at the Court's discretion), treble damages, and costs under 15 U.S.C. § 1117 to Plaintiffs.

86.     This is an exceptional case, making Plaintiffs eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

### THIRD CAUSE OF ACTION

**Unfair Competition in Violation of the Common Law**

87.     Plaintiffs reallege and incorporate by reference each of the allegations in paragraphs 1–61 of this Complaint as though fully set forth here.

88.     The above-described acts of Defendants constitute common law unfair competition.

89.     The above-described acts of Defendants unfairly and wrongfully exploit Plaintiffs' trademark, goodwill, and reputation.

90.     By reason of the above-described acts of Defendants, Plaintiffs have suffered damage to the goodwill associated with the Ozempic® and Wegovy® trademarks.

91.     The above-described acts of Defendants have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs and the Ozempic® and Wegovy® trademarks.

92.     The above-described acts of Defendants have irreparably harmed and, if not enjoined, will continue to irreparably harm the interest of the public in being free from confusion, mistake, and deception.

93.     By reason of Defendants' acts, Plaintiffs' remedies at law are not adequate to compensate for the injuries inflicted by Defendants. Accordingly, the Court should enter preliminary and permanent injunctive relief, in addition to awarding disgorgement of Defendants' profits and corrective advertising costs to Plaintiffs.

## FOURTH CAUSE OF ACTION

### Deceptive and Unfair Trade Practices in Violation of § 502.21, *et seq.*, Florida Statutes

94.     Plaintiffs reallege and incorporate by reference each of the allegations in  paragraphs 1–61 of this Complaint as though fully set forth here.

95.     The above-described acts of Defendants constitute unfair methods of competition, and unconscionable, deceptive, or unfair acts or practices in violation of Florida law, including Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Section 502.201, *et seq.*, Florida Statutes.

96.     FDUTPA is designed "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair trade practices in the conduct of any trade or commerce." FDUTPA § 502.201.

97.     The above-described acts of Defendants have been made in the conduct of Defendants' business, trade, or commerce.

98.     The above-described acts of Defendants have wrongfully exploited Plaintiffs' trademarks in a manner likely to deceive the public and mislead reasonable patients.

99.     The above-described acts of Defendants have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs and the value of the trademarks.

100.    The above-described acts of Defendants have irreparably harmed and, if not enjoined, will continue to irreparably harm the interest of the public in being free from confusion, mistake, and deception.

101.    Members of the public are also likely to suffer injury from the above-described acts of Defendants by purchasing a drug that they believe to be equivalent to Plaintiffs' FDA-approved semaglutide medicines, Ozempic® and Wegovy®, not an Unapproved Compounded Drug that does not have the same safety, quality, and effectiveness assurances as approved drugs.

102.    By reason of the above-described acts of Defendants, Plaintiffs have suffered damage to the goodwill associated with its trademarks.

103.    Defendants have unfairly profited from the actions alleged.

104.    By reason of Defendants' acts, Plaintiffs' remedy at law is not adequate to compensate for the injuries inflicted by Defendants. Accordingly, the Court should enter preliminary and permanent injunctive relief, in addition to awarding disgorgement of Defendantss profits and corrective advertising costs to Plaintiffs.

## <u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiffs request judgment against Defendants as follows:

1.    That the Court enter a judgment against Defendants that Defendants have:

   a.    Infringed the rights of Plaintiff NNAS in its federally registered Ozempic® and Wegovy® marks, in violation of 15 U.S.C. § 1114(1);

   b.    Infringed the rights of Plaintiffs in the Ozempic® and Wegovy® marks and engaged in unfair competition, in violation of 15 U.S.C. § 1125(a);

   c.    Engaged in false and misleading advertising and promotion, in violation of 15 U.S.C. § 1125(a);

   d.    Engaged in unfair competition under the common law and violated FDUTPA, Section 502.201, *et seq.*, Florida Statutes.

2.      That each of the above acts was willful.

3.      That the Court preliminarily and permanently enjoin and restrain Defendants and their agents, servants, employees, successors, and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendants, from:

   a.  using the Ozempic® and Wegovy® marks in any manner, including but not limited to (i) use in any manner that is likely to cause confusion or mistake, to deceive, or otherwise infringe Novo Nordisk's rights in the Ozempic® and Wegovy® marks in any way, or (ii) use in connection with the advertising, marketing, sale, or promotion of any Unapproved Compounded Drugs; and,

   b.  advertising, stating, or suggesting that any Unapproved Compounded Drugs, including but not limited to any Unapproved Compounded Drugs that either are available, directly or indirectly, from or through Defendants or the use of which or access to which is facilitated by, or with the involvement of, Defendants:

      i.   are, or contain, genuine or authentic Novo Nordisk Ozempic® or Wegovy® medicines;

      ii.  are sponsored by or associated with Novo Nordisk;

      iii. are approved by the FDA; have been reviewed by the FDA for safety, effectiveness, or quality; or have been demonstrated to the FDA to be safe or effective for their intended use;

      iv.  achieve or have been shown or proven to achieve certain therapeutic results, effects, or outcomes, including but not limited to by relying on or making reference to clinical trial results for Novo Nordisk's medicines;

     v.   achieve or have been shown or proven to achieve therapeutic results, effects, or outcomes similar or identical to Novo Nordisk's medicines and/or are interchangeable with or equivalent to genuine Novo Nordisk medicines;

     vi.   are associated or connected in any way with Novo Nordisk or Novo Nordisk's medicines; or

     vii.   contain any ingredient (including but not limited to semaglutide) that is supplied by Novo Nordisk, is approved by the FDA, or is the same as any ingredient in any Novo Nordisk medicine.

c.   engaging in any unfair competition with Plaintiffs; and/or

d.   engaging in any deceptive acts or practices.

4.     That the Court require Defendants to disclose conspicuously and prominently in any public-facing materials for any Unapproved Compounded Drugs, including but not limited to all advertising, marketing, and promotional materials, that: (a) the Unapproved Compounded Drugs are compounded drugs that have not been approved by the FDA; have not been reviewed by the FDA for safety, effectiveness, or quality; and have not been demonstrated to the FDA to be safe or effective for their intended use; (b) the processes by which the compounded drugs are manufactured have not been reviewed by the FDA; and (c) FDA-approved medicines containing semaglutide are available.

5.     That Plaintiffs be awarded monetary relief in the form of disgorgement of Defendants' profits for Defendants' trademark infringement, false advertising, and unfair competition and that this monetary relief be trebled due to Defendants' willfulness, in accordance with the provisions of 15 U.S.C. § 1117 and any applicable state laws.

6.     That the Court award disgorgement of Defendants' profits resulting from Defendants' infringement of Plaintiffs' rights and by means of Defendants' unfair competition to Plaintiffs.

7.     That Defendants be ordered to account for and disgorge to Plaintiffs all amounts by which Defendants have been unjustly enriched by reason of Defendants' unlawful actions.

8.     That Plaintiffs be awarded punitive damages by reason of Defendants' willful unlawful actions.

9.     For pre-judgment and post-judgment interest on all damages.

10.    That the Court award Plaintiffs their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117, Fla. Stat. § 501.2105, and any other applicable provision of law.

11.    That the Court award Plaintiffs the costs of suit incurred herein.

12.    For such other or further relief as the Court may deem just and proper.


Dated: September 6, 2024                        Respectfully submitted,

                                By:    /s/ Jordan S. Cohen
                                       Jordan S. Cohen (FBN 551872)
                                       WICKER SMITH O'HARA
                                       MCCOY FORD P.A.
                                       515 East Las Olas Boulevard, Suite 1400
                                       Fort Lauderdale, FL 33301
                                       (954) 847-4834
                                       jcohen@wickersmith.com

                                       Neil K. Roman (*pro hac vice* forthcoming)
                                       Yuval Mor (*pro hac vice* forthcoming)
                                       COVINGTON & BURLING LLP
                                       One CityCenter
                                       850 10th Street, NW
                                       Washington, DC 20001
                                       (202) 662-6000
                                       nroman@cov.com
                                       ymor@cov.com

                                       *Attorneys for Plaintiffs*
                                       *NOVO NORDISK A/S and*
                                       *NOVO NORDISK INC.*